UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMARA D.,

             Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

Case No. C22-5031-DGE

**ORDER REVERSING AND REMANDING DENIAL OF BENEFITS**

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI").

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") did not err in discounting Plaintiff's symptom testimony, but erred in rejecting portions of Dr. Wesson's medical opinion.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed claims for DIB and SSI on June 6, 2018, alleging in both applications a disability onset date of January 28, 2018. (Administrative Record ("AR") 15, 90, 98.) Plaintiff later amended her alleged onset date to March 6, 2019. (AR 15, 43, 46.) The ALJ found that Plaintiff last met the insured status requirement of the Social Security Act through December 31,

2020, making the relevant period March 6, 2019 through December 31, 2020. (AR 18.)

Plaintiff was born in 1963 and was 55 years old when she filed her applications. (AR 90, 98.) Plaintiff has some college education, and has worked as an office assistant, daycare worker, baker, server, dishwasher, and cashier before she stopped working in March 2019 due to symptoms stemming from her impairments, including neck pain, headaches, and joint pain. (AR 52–54, 56–59, 96.) The ALJ found Plaintiff has the severe impairments of cervical spine degenerative disc disease; peripheral neuropathy; bilateral hand osteoarthritis; history of bilateral ulnar nerve transpositions; paroxysmal atrial fibrillation; essential hypertension; and status post malignant neoplasm of the breast with adjuvant treatment. (AR 18.) The ALJ also found Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work with additional limitations, and Plaintiff is not disabled because she can perform past relevant work as a customer service representative. (AR 18-28.)

Plaintiff's applications were denied initially and on reconsideration. (AR 15, 96, 104, 117, 128.) ALJ Jones held a hearing on February 4, 2021. (AR 38–87.) On June 15, 2021, ALJ Jones issued a decision finding Plaintiff was not disabled. (AR 12–35.) On November 19, 2021, the Social Security Appeals Council denied Plaintiff's request for review. (AR 1–3, 862–68.)

Plaintiff filed a complaint in this Court seeking judicial review of ALJ Jones's decision on January 24, 2022. (Dkt. No. 3.)

In her opening brief, Plaintiff maintains that the ALJ erred by failing to provide clear and convincing reasons for discounting her symptom testimony and rejecting Dr. Wesson's medical opinion. (Dkt. No. 9.)

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 2

## II. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Ford*, 950 F.3d at 1154. This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## III. DISCUSSION

### A. Whether the ALJ erred in evaluating Plaintiff's testimony

Plaintiff contends the ALJ erred in evaluating her testimony concerning her hand and joint pain, headaches, and neck pain. (Dkt. No. 9.)

Plaintiff testified she stopped working because of her neck pain. (AR 57.) She stated she has always had neck pain but did not start complaining about it until they led to horrible headaches and that she wakes up with headaches almost every day and they last for hours, sometimes all day. (AR 60–61.) Plaintiff also testified that she cannot lift anything, and her hands and bones feel "heavy." (AR 57, 59.)

Where, as here, an ALJ determines that a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there

is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity "by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014).  In this case, the ALJ reasonably discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. (AR 21–26.)

In discounting Plaintiff's testimony about her hand and joint pains, the ALJ reasonably concluded that the medical evidence indicated they were not as severe as she alleged.  (AR 23-24.)  When Plaintiff started to complain about her hand pain, Dr. Wesson ordered tests to rule out rheumatoid arthritis factor.  (AR 842–43.)  Lab results showed "everything was normal" and "RA/CRP were negative as well as ANA." (*See* AR 830–34.)  Plaintiff's medical records also show she demonstrated normal range of motion, strength, sensation, and reflexes.  (AR 830, 834.)  An electrodiagnostic testing of her bilateral upper limbs showed they were "completely normal."  (AR 998).  She was found to have intact sensation and full strength throughout the bilateral upper limbs and normal muscle bulk and tone.  (AR 997.)

The ALJ also reasonably discounted Plaintiff's testimony about always having had neck pain because it was inconsistent with the medical record.  (AR 25.)  The ALJ first pointed out that Plaintiff's statement was negated by the fact that she did not report this symptom until November 2019, and that prior to that time, treatment notes show Plaintiff was either healthy or being treated for a wide range of conditions, but mainly not for neck pain.  (*Id.*)  For example, in November 2017, Plaintiff reported being "very healthy" (AR 480); in May 2018, her physical exam returned normal results (AR 506, 508–512); in August 2018, she denied neck stiffness (AR 541); and in October 2018, she reported "increased joint aches and pains" but attributed them to the hormonal treatment that she was undergoing and wanted to discontinue due to their side

effects. (AR 537.) In October 2019, Plaintiff reported about her symptoms but not neck pain (AR 829); in November 2019, Plaintiff reported neck pain for the first time and a scan revealed "no significant appearing degenerative changes in the cervical spine" (AR 745); and in December 2019, she presented to Dr. Wesson about "worsening pain over the last several weeks," and Dr. Wesson advised she follow up with her MRI result for further management. (AR 849.) The ALJ also noted that in February 2020, Plaintiff starting physical therapy for neck pain but was discharged due to limited progress. (AR 23; *see* AR 896, 906). In June 2020, Dr. Wesson again saw Plaintiff about hand pain, but his treatment notes omit any mentions of neck pain. (AR 24; s*ee* AR 997–98). In October 2020, Dr. Wesson again saw Plaintiff. Under the physical exam findings section of his notes, Dr. Wesson stated "Neck [Supple, non-tender]." (AR 829.) Considering Plaintiff's medical record, the ALJ could reasonably find Plaintiff's statement about always having had neck pain inconsistent with the medical record. The Court will accordingly not disturb this finding.

The ALJ similarly rejected Plaintiff's testimony about the severity of her headaches as inconsistent with the medical record. (AR 25.) The ALJ found Plaintiff's medical records rarely mentioned this symptom, and denied having them throughout the record. (AR 25 (citing AR 611, 750, 919, 997.))

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)). Plaintiff's medical record often showed normal findings when it came to her hands and upper extremities. Plaintiff's medical record also shows her neck pain and headache have not been as persistent as she alleged, therefore the Court cannot say the ALJ unreasonably found the medical record undercuts

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 5

Plaintiff's testimony. Accordingly, the Court affirms the ALJ's decision to discount Plaintiff's testimony. The ALJ provided other reasons to discount Plaintiff's testimony, but in providing at least one valid reason to do so, the Court does not need to further analyze those reasons, as any errors the Court may find would be deemed harmless. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

**B. Whether the ALJ Erred in Rejecting Dr. Wesson's Medical Opinion**

Plaintiff contends the ALJ erred in rejecting the medical opinion of Dr. Wesson. (Dkt. 9 at 7–8.)

Dr. Wesson, one of Plaintiff's treating providers,[1] completed a questionnaire prepared by Plaintiff's counsel on January 12, 2021, which lists a series of statements and poses questions about Plaintiff's impairments and her ability to work. (AR 950–52).

The first question asked, "Is Ms. Davis treated for medical conditions that would interfere with prolonged standing, walking or sitting upright, use of either upper extremity for reaching, holding, handling or fingering, and/or would require that her lay down at times during the day?" (AR 950.) Dr. Wesson circled "Yes," and then wrote that those medical conditions were "1) Peripheral neuropathy" and "2) Cervical spondylosis with radiculopathy." (*Id*.) Another asked Dr. Wesson to indicate the number of work hours Plaintiff is able to stand/walk during an eight-hour workday. (AR 951.) Dr. Wesson circled "1 hour." (*Id*.) Another asked the number of work hours Plaintiff is able to sit upright during an eight-hour workday. For this question, Dr. Wesson circled "About 2 hours." (*Id*.) Another asked Dr. Wesson to indicate Plaintiff's

---

[1] (*See* AR 561-66, 634-38, 816-36, 842-53, 861-63.)

limitations in hand and arm use for reaching, holding, handling, and manipulating objects during an eight-hour workday. (AR 952.) For this question, Dr. Wesson indicated that both of Plaintiff's upper extremities would be limited. (*Id.*)

In *Woods v. Kijakazi*, 2022 WL 1195334 (9th Cir. 2022), the Court of Appeals held the regulations governing applications filed after March 27, 2017 supplant the hierarchy governing the weight an ALJ must give medical opinions and the requirement the ALJ provide specific and legitimate reasons to *reject a doctor's opinion*. Under the new regulations, the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), with supportability and consistency being the two most important factors. Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 416.920c(b)(2), (c), § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

The ALJ's decision must explain how the ALJ considered the factors of supportability and consistency, 20 C.F.R. § 416.920c(b), and must be supported by substantial evidence. An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 2022 WL 1195334, at *6. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).

In this case, the ALJ reasonably rejected some parts, but not all, of Dr. Wesson's medical opinion. Specifically, the ALJ reasonably rejected the portion of Dr. Wesson's medical opinion

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 7

pertaining to Plaintiff's use of her hands and upper extremities for being inconsistent with the overall medical evidence. (*See* AR 27.) In the previous section, the Court found the ALJ reasonably discounted Plaintiff's testimony about her hand and joint pains inconsistent with treatment notes in the record showing Plaintiff had normal range of motion, strength, sensation, and reflexes, and her bilateral upper limbs were normal. Because the ALJ provided the same reason to discount Dr. Wesson's opinion, the Court finds here that the ALJ provided a valid reason to discount the portion of Dr. Wesson's concerning Plaintiff's use of her hands and upper extremity.

       The ALJ, however, did not reasonably reject Dr. Wesson's medical opinion regarding Plaintiff's ability to withstand prolonged sitting, standing, and walking. First, the ALJ found this portion of Dr. Wesson's opinion inconsistent with the overall medical record, including Dr. Wesson's own treatment notes. (AR 27.) However, this is "boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014). First, the ALJ provides no explanation as to how Dr. Wesson's opinion is internally inconsistent. Dr. Wesson's treatment notes include reports and assessments about Plaintiff's back, neck, and joint pains, but they do not necessarily negate his opinion about Plaintiff's sitting, standing, and walking limitations. (*See* AR 561, 835, 849.) Second, the ALJ also fails to specifically explain which other medical evidence in Plaintiff's record undermines Dr. Wesson's opinion about Plaintiff's sitting, standing, and walking limitations. The medical evidence discussed by the ALJ include those pertaining to Plaintiff's symptoms and treatments unrelated to this case, but the ALJ does not direct the Court to the evidence the Court may consider to decide whether his conclusion was substantially supported. It is not the job of the reviewing court to comb the administrative record to find specific conflicts. *Burrell v. Colvin*,

775 F.3d 1133, 1138 (9th Cir. 2014).  Without further clarifying the purported internal inconsistencies between Dr. Wesson's opinion and his own treatment notes, and without explaining which medical evidence in Plaintiff's record undermines Dr. Wesson's opinion about Plaintiff's sitting, standing, and walking limitations, the Court cannot affirm the ALJ's finding.

The ALJ also found Dr. Wesson's opinion inconsistent with Plaintiff's conservative treatment history, showing her symptoms "managed effectively primarily by Tylenol." (AR 27.) But the Court cannot say the record supports the ALJ's finding.  In March 2019, Plaintiff started complaining to treating physician Dr. Wesson about pain in her right upper back that had been ongoing for two months.  (AR 561.)  She reported taking Cyclobanzaprine, which "seem[ed] to help."  (*Id.*)  Dr. Wesson noted that her back pain was "[l]ikely muscle strain" and advised her to continue taking Cyclobenzaprine and Lidocaine cream. (*Id.*)  Plaintiff later complained about lower back pain.  (AR 834.)  Dr. Wesson noted he suspected sciatic nerve pain and decided to increase the dosage of her Gabapentin.  (AR 835.)  But Besides Dr. Wesson's notes about the possible causes of Plaintiff's back pain and his prescribed treatment, nothing else in Plaintiff's record negates Dr. Wesson's findings concerning Plaintiff's ability to withstand prolonged sitting, standing, and walking.

Finally, the ALJ also erred in finding Dr. Wesson's opinion inconsistent with Plaintiff's daily activities, such as managing self-care, cooking, performing household chores, driving, shopping, and running errands independently.  (AR 26.)  The ALJ does not explain how Plaintiff's ability to perform these activities contradict Dr. Wesson's opinion about Plaintiff's limitations during a normal eight-hour workday.  (AR 26.)  This is harmful error, as "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*,

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 9

885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).  Accordingly, the Court finds the ALJ harmfully erred in rejecting Dr. Wesson's medical opinion for this reason.

In sum, because the ALJ reasonably rejected Dr. Wesson's medical opinion pertaining to Plaintiff's use of her hands and upper extremities, the Court affirms the ALJ's decision to reject that portion of Dr. Wesson's opinion.  However, because the ALJ failed to provide at least one valid reason to reject Dr. Wesson's opinion pertaining to Plaintiff's sitting, standing, and walking limitations, the Court finds the ALJ committed harmful error.

## IV.   ORDER

Based on the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should re-evaluate Dr. Wesson's medical opinion concerning Plaintiff's ability to withstand prolonged sitting, standing, and walking.

DATED this 28th day of June 2022.

David G. Estudillo
United States District Judge

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 10